IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN BROOKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Kevin Brooks, age 39, experienced severe abdominal pain while he was a federal prisoner at SCP Marion, a minimum-security work camp affiliated with the federal prison located in Marion, Illinois. Plaintiff suffered acute appendicitis and, ultimately, a ruptured appendix—a life-threatening condition requiring urgent medical intervention—which United States prison employees failed to respond to with appropriate medical attention for over two weeks despite his obvious need and persistent pleading for care. Due to federal employees' actions, omissions, policies, procedures, practices, and failures to take reasonable measures to provide treatment for his serious medical needs, Plaintiff suffered pain, infection, complications, and permanent injuries. This is a Federal Tort Claims Act ("FTCA") action seeking compensatory damages.

## JURISDICTION AND VENUE

1. This is an action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b)(1).

1

2.      Venue is proper under 28 U.S.C. § 1391(e)(1)(C) because defendants are officers or employees of the United States acting in their official capacity under color of legal authority, and Plaintiff resides in this judicial district.

## PARTIES

3.      Plaintiff Kevin Brooks is a resident of Joliet, Illinois and is no longer in law enforcement custody.

4.      At all times relevant to this suit, Defendant United States of America had as a constituent agency the Bureau of Prisons, which operated SCP Marion and was responsible for the care, health, and welfare of Plaintiff and other prisoners within its custody. *See* 18 U.S.C. § 4042.

5.      At all times relevant to this Complaint, the United States of America employed FNP-C J. Richardson, Registered Nurse Bryant McGee, Physician's Assistant Leslee Brooks, Health Services Administrator Dr. E. Harbison, and Camp Administrator Melissa Schreiber, Bureau of Prisons (BOP) employees who, while acting within the scope of their office or employment, occasioned the acts and omissions which caused Plaintiff's injuries.

## FACTS

6.      In December of 2020, Plaintiff Kevin Brooks was a federal prisoner housed at SCP Marion, a minimum-security satellite work camp of the United States Penitentiary Marion operated by the Bureau of Prisons. As such the only option available to him for medical care was the Bureau of Prisons Health Services Unit.

7.      On or about December 26, 2020, Plaintiff began experiencing sharp abdominal pain.

2

8. Plaintiff's abdominal pain continued as he exhibited obvious signs of distress, for which he sought medical treatment and reported his pain.

9. He received no relief, and his pain continued.

10. On or about Monday, December 28, Plaintiff described his sharp abdominal pains to Nurse Bryant McGee, who failed to physically examine Plaintiff, but only provided him with Tylenol tablets, which did not resolve the pain.

11. On December 28, McGee failed to send Plaintiff to the hospital, and/or failed to communicate with a supervisor or physician, including failing to notify them that Plaintiff should be sent to the hospital, where competent medical providers would have properly assessed and treated the condition underlying his symptoms.

12. Plaintiff continued to experience pain in his abdominal area, which worsened to the point that he could not sleep, but no medical provider followed up with him or saw him.

13. BOP records reflect that on January 5, 2021, Plaintiff was seen by J. Richardson, FNP-C, who listened to Plaintiff's abdomen and recorded hearing hypo-active bowel sounds.

14. Plaintiff's pain had not subsided and had continued and increased in intensity over the course of approximately ten days.

15. Other than listening to Plaintiff's abdomen, Richardson did not perform any examinations, did not palpate Plaintiff's abdomen, and did not request any diagnostic lab tests or take any action to determine the cause of Plaintiff's symptoms. He did not consult a physician or any other medical provider.

16. On January 5, Richardson failed to send Plaintiff to the hospital, and/or failed to communicate with a supervisor or physician, including failing to notify them that Plaintiff should

be sent to the hospital, where competent medical providers would have properly assessed and treated the condition underlying his symptoms.

17.    Richardson erroneously concluded Plaintiff was suffering from constipation and provided him over-the-counter laxatives.

18.    While still in Richardson's presence, Plaintiff took the first dose of the laxative. As he was walking away from sick call, Plaintiff vomited a gray and green substance. Richardson instructed Plaintiff to continue to the living area and return the next day if his symptoms did not improve. He failed to record that Plaintiff vomited.

19.    Subsequently Plaintiff's pain continued to worsen to the point that he could no longer walk under his own power.

20.    Between six and eight of his fellow prisoners carried him to a sick call on a gurney, where he was seen by McGee and Richardson, who again failed to provide him proper treatment, provided him with no relief, asked him if he hadCOVID-19, gave him Tylenol, and sent him away.

21.    At that time, despite observing that Plaintiff was unable to walk, the medical record makes no mention that Richardson and McGee physically examined Plaintiff, performed any tests, ordered any labs, or consulted a physician or any other medical provider.

22.    Both Richardson and McGee failed to send Plaintiff to the hospital, and/or failed to communicate with a supervisor or physician, including failing to inform them that Plaintiff should be sent to the hospital, where competent medical providers would have properly assessed and treated the condition underlying his symptoms.

4

23. Plaintiff was in such pain that he was unable to do anything but lie in bed for days. He was unable to perform his normal activities and could not perform his work assignments.

24. At some point, Camp Administrator Melissa Schreiber, who was performing a routine walk-through of Plaintiff's living area with a correctional officer, observed Plaintiff lying in bed in extreme pain; despite Schreiber's reassurances to Plaintiff that he would receive medical attention, Schreiber failed to ensure that Plaintiff received said medical attention.

25. Plaintiff experienced ongoing debilitating pain, but he was not seen by any medical provider for days despite his obvious suffering and repeated pleas.

26. Plaintiff continued to experience pain, bloating, and cramping, began to feel extremely cold, and had difficulty moving at all.

27. According to BOP records, in the evening hours of Saturday, January 9, McGee examined Plaintiff, recording that Plaintiff had a temperature of 100.7 degrees Fahrenheit, and that Plaintiff reported his pain level at 10 out of 10.

28. This encounter on January 9—two weeks after Plaintiff first began telling medical staff that he was in pain—marked the first time that a medical provider palpated Plaintiff's abdomen or took his temperature.

29. McGee telephoned the on-call physician's assistant, Leslee Brooks, telling Brooks that Plaintiff had an elevated pulse and temperature and had complained of abdominal pain for over a week. Brooks ordered a COVID-19 swab and a Tylenol prescription.

30. Brooks failed to document what, if anything, she did to determine why she took this course of action and no other, and failed to document anything indicating that she communicated with any other medical provider about Plaintiff's medical condition.

5

31.     At no point did Brooks personally examine or even speak to Plaintiff. She did not take or order any laboratory tests, nor did she document any communication with a physician to urge them to take or order such tests.

32.     On January 9, 2021, Brooks failed to send Plaintiff to the hospital, and/or failed to communicate with a physician, including failing to inform them that Plaintiff should be sent to the hospital, where competent medical providers would have properly assessed and treated the condition underlying his symptoms.

33.     Brooks failed to record anything reflecting that she in any way made any recommendation for additional treatment, monitoring, or follow up with respect to Plaintiff.

34.     Brooks did not review and electronically sign McGee's records from Plaintiff's treatment on January 9 until January 15, after Plaintiff had already been hospitalized.

35.     On January 9, 2021, after receiving Brooks' orders for a COVID-19 swab and Tylenol, McGee instructed Plaintiff to "drink plenty of fluids, avoid food consumption, and report back to medical tomorrow morning for reevaluation." He prescribed Tylenol and sent Plaintiff away.

36.     McGee failed to document that he informed Brooks or a physician that he had seen Plaintiff in pain multiple times over the preceding weeks, that Plaintiff had reported his pain level was at 10 out of 10, that he had observed Plaintiff requiring help from other inmates to walk, or that Plaintiff had previously been prescribed Tylenol and medications for constipation that did not alleviate Plaintiff's symptoms.

37.     On January 9, 2021, McGee failed to take or order any laboratory tests, and failed to document any communication with Brooks or a physician to urge them to take or order such tests.

38. On January 9, 2021, McGee failed to send Plaintiff to the hospital, and/or failed to communicate with Brooks or a physician that Plaintiff should be sent to the hospital, where competent medical providers would have properly assessed and treated the condition underlying his symptoms.

39. In fact, there is no record that any BOP medical provider ever notified a physician about Plaintiff's symptoms until after he was already hospitalized, and there is no record that a BOP physician ever examined or treated him.

40. On the morning of Sunday, January 10—over two weeks after he first reported pain to a medical provider—Nurse J. Hughes examined Plaintiff in his bunk and recognized that Plaintiff's life depended on his immediate transfer to a hospital.

41. Finally, at Nurse Hughes's urging, Plaintiff was approved for transfer to Heartland Regional Medical Center's emergency room.

42. Plaintiff was unable to walk, so two of his fellow prisoners helped carry him to the car that would take him to the hospital—no one called an ambulance. Correctional officers drove Plaintiff to the hospital.

43. At the hospital, the doctor who performed Plaintiff's initial examination recorded that he was "in obvious distress" and "obviously ill." The doctor's examination of Plaintiff's abdomen revealed "severe" distension and "severe" abdominal tenderness upon palpation.

44. After laboratory and other testing, Plaintiff was diagnosed with acute appendicitis with generalized peritonitis—an infection of the abdominal cavity—perforated viscus, and severe sepsis—all life-threatening conditions.

45. Plaintiff was placed in the intensive care unit (ICU), and his condition was marked as critical and "a certified medical emergency." Plaintiff was given antibiotics and fentanyl and other narcotic painkillers for his pain.

46. Plaintiff underwent emergency exploratory surgery and ultimately an appendectomy on January 10, the day he arrived at the hospital. The surgery confirmed that Plaintiff's appendix had ruptured.

47. Plaintiff remained in the hospital for two weeks, spending over a week in critical condition in the ICU, intubated and sedated, breathing through a ventilator and being fed through tubes.

48. While in the hospital and unable to move, Plaintiff developed a bed sore on his left buttocks that, to this day, still causes him discomfort and disfigurement.

49. On January 14, Plaintiff underwent a second surgery to wash out the infection and partially close his abdomen.

50. The surgeries left Plaintiff disfigured, with a long and permanent scar from his upper abdomen to his pubic area.

51. As a result of the delay in treatment of the ruptured appendix, Plaintiff developed diastasis recti, which is a separation of the large abdominal muscles, causing a permanently protruding stomach.

52. Plaintiff continues to suffer other adverse effects from his ordeal, including pain—particularly while lifting heavy objects, and during sex—fatigue after exertion, overheating, shortness of breath, and nausea.

53. At all times relevant to this Complaint, Schreiber and Health Services Administrator Dr. E. Harbison were responsible for creating and implementing appropriate

policies to ensure that prisoners within their care received adequate medical treatment for their health needs.

54. Schreiber and Harbison failed to create and implement appropriate policies to ensure that prisoners received adequate medical treatment including, but not limited to, by:

a. failing to establish and/or implement treatment protocols, policies, practices, and procedures to ensure that individuals detained at SCP Marion receive appropriate medical care for serious medical needs;

b. failing to establish and/or implement treatment protocols, policies, practices, and procedures to ensure that if appropriate medical care could not be provided at SCP Marion, incarcerated individuals received appropriate medical care outside the camp;

c. failing to adequately and appropriately monitor the deteriorating medical conditions of individuals detained at the camp;

d. failing to establish and/or implement treatment protocols, policies, practices, and procedures to ensure that individuals with serious medical needs receive appropriate and adequate follow up of their medical conditions;

e. failing to ensure that medical staff at SCP Marion were adequately trained, supervised, and disciplined to ensure that individuals detained at SCP Marion receive appropriate medical care;

f. failing to ensure that medical providers were adequately and appropriately supervised and monitored by appropriately licensed medical providers;

55. As a direct and proximate result of Defendant's employees' acts, omissions, and policies or absence of policies, as set forth above, Plaintiff suffered, *inter alia*, permanent injury, scarring, pain, suffering, sleep difficulties, and distress, as more fully described above.

**COUNT I – Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680**

56. Paragraphs 1-56 of this complaint are incorporated as if restated fully herein.

57. Plaintiff has performed the adequate prerequisites to filing this action as required by 28 U.S.C. § 2675. Plaintiff timely submitted his claim to the appropriate federal agency— which acknowledged receipt of Plaintiff's claim on December 28, 2022. More than six months has elapsed without any action by the United States. Therefore, pursuant to § 2675, Plaintiff's claim is deemed to have received a final denial, entitling Plaintiff to institute and file the cause of action herein.

58. Under the FTCA, Defendant United States is liable for personal injury caused by the negligent or wrongful acts of its employees under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1).

59. At all times relevant to this suit, Defendant United States owed a duty of care to Plaintiff Brooks as a prisoner in its custody. 18 U.S.C. § 4042.

60. In the manner described more fully above, Richardson, McGee, and Brooks, who were at all relevant times employees of Defendant United States, acting within the scope of their employment, breached their duty of care by negligently and wrongfully failing to provide Plaintiff Brooks with appropriate health care in accordance with the standards of care in their respective professional communities and engaged in other wrongful conduct.

61. Richardson, McGee, and Brooks deviated from the standard of care, were negligent, and/or engaged in other wrongful conduct, in one or more of the following ways, as set forth in greater detail above:

    a. Failing to ensure that Plaintiff was provided with reasonable care for his condition, in accordance with the standards of care in their respective professional communities;

    b. Failing to recognize the nature of his condition;

    c. Failing to promptly and thoroughly communicate his condition and/or properly inquire or find out about his condition;

    d. Failing to adequately evaluate, document, monitor, and/or follow up on his condition;

    e. Failing to adequately prevent escalation, stabilize, and/or supervise his condition; and,

    f. Failing to properly intervene to prevent the complications known to result from his condition.

62. Defendant Schreiber deviated from the standard of care, was negligent, and/or engaged in other wrongful conduct, by failing to follow up and ensure that Plaintiff received proper medical care.

63. Defendants Schreiber and/or Defendant Harbison, breached their duty of care, were negligent, and/or engaged in other wrongful conduct by failing to create and implement appropriate policies to ensure prisoners in their care received adequate medical treatment, as set forth in greater detail above.

11

64.     As a result of these federal employees' negligent and wrongful conduct, Plaintiff suffered injuries.

65.     If Defendant United States were a private person, it would be liable to Plaintiff Brooks in accordance with the laws of the State of Illinois.

WHEREFORE, Plaintiff demands judgment against Defendant United States of America for compensatory damages, plus costs and attorneys' fees and whatever additional relief this court finds equitable and just.

Dated: May 3, 2024                              Respectfully Submitted,

                                                s/ Janine L. Hoft
                                                Janine L. Hoft
                                                Jan Susler, Nora P. Snyder
                                                PEOPLE'S LAW OFFICE
                                                1180 N. Milwaukee Ave., 3rd floor
                                                Chicago, IL 60642
                                                773.235.0070

                                                **Attorneys for Plaintiff Kevin Brooks**